UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Richard LaRiviere

    v.                                                   Civil No. 14-cv-405-JD
                                                          Opinion No. 2016 DNH 032

Adam Rosario, et al.


O R D E R

Richard LaRiviere, proceeding pro se and in forma pauperis, brings civil rights claims under 42 U.S.C. § 1983 against Adam Rosario, a corrections officer, and other employees of the Hillsborough County Department of Corrections.  LaRiviere's claims arose while he was incarcerated as a pretrial detainee.  Rosario moves for summary judgment, and LaRiviere objects.[1]

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the

---

[1] LaRiviere's pending motion for discovery does not affect the outcome of the motion for summary judgment.  Cf. Fed. R. Civ. P. 56(d).

case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). Reasonable inferences are taken in the light most favorable to the nonmoving party, but unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted).

## Background[2]

LaRiviere was a pretrial detainee at the Hillsborough County House of Corrections on June 17, 2014. His cellmate was Devonta Searcy. Searcy provided his affidavit in support of Rosario's motion for summary judgment in which he describes the events on the night on June 17.

Searcy states that while he was sleeping, an officer shined a light on his face, which woke him up. Once awake, he heard

---

[2] Under the local rules of this district, "a memorandum in support of a summary judgment motion shall incorporate a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried." LR 56.1(a). Rosario's memorandum did not include the required factual statement but instead provided facts with record citations in the argument section of the memorandum. Counsel is put on notice that the memorandum does not conform to the local rule and similar filings in the future may be rejected. LaRiviere's objection also does not include a factual statement. See LR 56.1(b).

LaRiviere moaning and calling "help" softly.  When he looked down from his bunk, he saw blood dripping from LaRiviere's bunk.

Searcy went to the cell door and called for an officer.  An officer came to the door, and Searcy told him that there was blood on the floor.  The officer looked in with a flashlight and called a "code" on his radio.  Other officers and a nurse responded to the call.  Searcy was removed to another cell while they attended to LaRiviere.

In his own affidavit, Rosario provides a chronology of events that he took from the jail reports and records.  Rosario went to the cell door when Searcy called and saw LaRiviere on the bottom bunk with a small amount of blood on the floor.  LaRiviere did not answer to Rosario calling his name.  Rosario called a "10-33" on his radio, which announced a medical emergency, and a supervisor, three officers, and a nurse responded.  LaRiviere had a cut on his leg and was taken to the Elliott Hospital Emergency Room.

While in the hospital, LaRiviere told the officer assigned to him that he was attempting to commit suicide.  He said that just before lights out, he cut his leg with his razor and then wrapped the leg in a towel and went to sleep.  When he got up later to go to the bathroom, he got blood on the floor and passed out but managed to get back to his bunk.

LaRiviere disputes both Searcy's account and Rosario's account of what happened that night.  LaRiviere, however, did not provide his own affidavit or any other evidence to support his version of events.[3]  In addition, because LaRiviere's claim against Rosario is dismissed due to a lack of exhaustion, it is not necessary to resolve the factual disputes LaRiviere raises.

Rosario also states in his affidavit that LaRiviere's inmate file includes only one grievance, dated June 9, 2014, before the suicide attempt.  That grievance asks to speak to a doctor about a rash and lower back pain and states that Nurse Wheeler has a grudge against LaRiviere.  The response to the grievance is dated June 12, 2014.  LaRiviere did not file a grievance about the suicide incident.

## Discussion

As his complaint and amended complaint were construed on preliminary review, LaRiviere alleges that Rosario violated his Fourteenth Amendment right to humane treatment by being deliberately indifferent to LaRiviere's substantial risk of serious harm in the suicide attempt.  Rosario moves for summary judgment on the grounds that the undisputed facts show that he was not deliberately indifferent to a serious medical need and

---

[3] See Fed. R. Civ. P. 56(c) & LR 56.1(b).

that LaRiviere's claim cannot proceed because he failed to exhaust his administrative remedies.  Because the issue of exhaustion is dispositive, the court does not address the merits of the claim.

A prisoner is prohibited from bringing a claim challenging prison conditions under § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To satisfy the requirements of § 1997e(a), the prisoner must exhaust the administrative remedies properly, which includes "compliance with an agency's deadlines and other procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006).  Failure to exhaust is an affirmative defense to the claim brought by the prisoner. Jones v. Bock, 549 U.S. 199, 211 (2007).

Rosario provides evidence and LaRiviere does not dispute that Hillsborough County Department of Corrections had a mandatory grievance procedure in 2014 when these events occurred.  Rosario also shows that the grievance procedure was available to LaRiviere and that LaRiviere had filed a grievance less than two weeks before the suicide incident.  The record shows no grievance filed by LaRiviere about the suicide incident.

In his objection, LaRiviere addresses the exhaustion requirement only briefly.  He states: "Once again the subject

of grievances is being brought up.  One cannot file a grievance if one is not allowed to do so.  This was a right of the plaintiff that was repeatedly denied outright by jail staff." LaRiviere provided no affidavit or any other evidence to support that statement.

LaRiviere's statement is not properly supported and is not competent to dispute Rosario's evidence that the grievance process was available to LaRiviere.  LaRiviere does not explain what efforts he made to file a grievance or how he was prevented from doing so.  Ojo v. Medic, 2012 WL 7150497, at *6-*7 (D.N.H. Dec. 17, 2012) (explaining showing necessary to raise issue of unavailability).  Further, the record shows that LaRiviere did file a grievance against another jail employee shortly before the suicide incident.

Rosario has met his burden of showing that LaRiviere failed to exhaust the administrative remedies that were available to him before he filed suit.  See, e.g., Santiago v. N.H. Dep't of Corrs., 2015 WL 5097782, at *5 (D.N.H. Aug. 27, 2015); Kargbo v. Brown, 2013 WL 6533230, at *3 (D.N.H. Dec. 13, 2013).  Because LaRiviere did not show a factual dispute about his failure to exhaust or the availability of the grievance process, Rosario is entitled to summary judgment on the claim brought against him.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 51) is granted. Count III is dismissed.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph DiClerico, Jr.
United States District Judge

February 23, 2016

cc: Richard LaRiviere, pro se
    John A. Curran, Esq.
    Sarah Murdough, Esq.